Sally S. Chan, Esq. (SBN: 258775)
sally@wthemislaw.com
Karen K. Tso, Esq. (SBN: 285369)
karen@wthemislaw.com
**WEST THEMIS LAW, PC**
1000 Wilshire Boulevard, Suite 2150
Los Angeles, California 90017
Telephone: (213) 908-1103
Facsimile: (626) 737-8528

Attorneys for Plaintiff
EGGSLUT HOLDINGS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| EGGSLUT HOLDINGS LLC, a Washington limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> EGGSLUT NEW YORK, LLC, a Delaware limited liability company; GP EGG LLC, a New York limited liability company; GADI PELEG, an individual; and DOES 1-50, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT** <br> 2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> 3. **INTENTIONAL MISREPRESENTATION** <br> 4. **CONCEALMENT** <br> 5. **NEGLIGENT MISREPRESENTATION** <br> 6. **TRADEMARK INFRINGEMENT AND COUNTERFEITING** <br> 7. **UNFAIR COMPETITION** <br> 8. **DECLARATORY RELIEF** |

Plaintiff EGGSLUT HOLDINGS LLC alleges as follows:

## NATURE OF THE ACTION

1. This is an action for Breach of Contract, Breach of Implied Good Faith and Fair Dealing, and Fraud.

## PARTIES

2. Plaintiff EGGSLUT HOLDINGS LLC ("PLAINTIFF" or "EGGSLUT HOLDINGS") is and at all times mentioned in this Complaint a Washington limited liability company.

3. PLAINTIFF is informed and believes, and on that basis alleges that Defendant EGGSLUT NEW YORK LLC ("EGGSLUT NEW YORK") is and at all times mentioned in this Complaint a Delaware limited liability company.

4. PLAINTIFF is informed and believes, and on that basis alleges that Defendant GP EGG LLC ("GP EGG") is and at all times mentioned in this Complaint a New York limited liability company.

5. PLAINTIFF is informed and believes, and on that basis alleges that Defendant GADI PELEG ("PELEG") is and at all times mentioned in this Complaint an individual residing in New York. PELEG is the sole Managing Member and/or Manager of both EGGSLUT NEW YORK and GP EGG.

6. The true names and capacities of the Defendants named herein as DOES 1 to 50, inclusive, whether individual, corporate, or otherwise, are unknown to PLAINTIFF, and therefore, PLAINTIFF sues such defendants by fictitious names. PLAINTIFF will seek leave to amend the Complaint to allege the true names and capacities of the DOE Defendants when ascertained. PLAINTIFF is informed and believe and thereon alleges that each of the fictitious DOE Defendants participated in the acts and omissions alleged below.

7. PLAINTIFF is informed and believes and thereon alleges that at

all times relevant herein, Defendants, and each of them, were the agents and employees of each of their co-defendants, and in doing the things mentioned herein, were acting as such agents and employees with the permission, consent, and/or ratification of the co-defendants.

8. PLAINTIFF is informed and believes and thereon alleges that there exists, and at all times herein mentioned there existed, a unity of interest and ownership of and between DEFENDANTS and DOES 1 through 50 inclusive, such that any individuality and separateness of each Defendant has ceased.

9. PLAINTIFF is informed and believe, and on that basis allege, that each of the Defendants named herein as DOES 1 through 50 was the agent, servant, employee, and representative of one or more of the other Defendants, and in engaging in the acts or omissions alleged below, was acting within the scope of its authority as such agent, servant, employee and representative with the permission and consent of the above individuals and/or entities.

10. At all times herein mentioned, DEFENDANTS participated in the doing of the acts and omissions herein alleged, were acting within the purpose, course and scope of said agency and/or employment to have been done by the named DEFENDANTS; and furthermore, the DEFENDANTS, and each of them, were the agents, managing agents, servants, employees, alter-egos, co-conspirators, joint-venturers, partners, successors-in-interest and/or predecessors-in-interest of each of the other DEFENDANTS.

11. At all times herein mentioned, DEFENDANTS were acting within the purpose, course and scope of said agency and/or employment so as to invoke vicarious liability and respondeat superior liability, among other theories of liability, to hold DEFENDANTS liable and responsible for the

injuries and damages to PLAINTIFF.

12. The term "DEFENDANTS" in this Complaint is intended to refer to Defendant EGGSLUT NEW YORK, Defendant GP EGG, Defendant PELEG, and all DOE Defendants in this action.

## ALTER EGO ALLEGATIONS

13. PLAINTIFF is informed and believes and thereon alleges that some of the DEFENDANTS herein, including but not limited to Defendant EGGSLUT NEW YORK and Defendant GP EGG, and Does 1 through 50, (hereinafter occasionally and collectively referred to as the "ALTER EGO CORPORATIONS"), and each of them, were at all times relevant the alter ego corporations of individual Defendant PELEG by reason of the following:

(a) PLAINTIFF is informed and believes and thereon alleges that said individual Defendant PELEG, at all times herein mentioned, dominated, influenced and controlled each of the ALTER EGO CORPORATIONS and the officers thereof as well as the business, property, and affairs of each of said corporations.

(b) PLAINTIFF is informed and believes and thereon alleges that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between Defendant PELEG and each of the ALTER EGO CORPORATIONS such that the individuality and separateness of said individual defendant and each of the ALTER EGO CORPORATIONS have ceased.

(c) PLAINTIFF is informed and believes and thereon alleges that, at all times since the incorporation of each, each ALTER EGO CORPORATION has been and now is a mere shell and naked framework which said individual defendant used as a conduit for the conduct of their personal business, property, and affairs.

(d) PLAINTIFF is informed and believes and thereon alleges that, at

all times herein mentioned, each of the ALTER EGO CORPORATIONS was created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by said individual Defendant PELEG, whereby the income, revenue, and profits of each of the ALTER EGO CORPORATIONS were diverted by said individual Defendant himself.

(e)  PLAINTIFF is informed and believes and thereon alleges that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was organized by said individual Defendant as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of said individual defendants, and each of them, and accordingly, each ALTER EGO CORPORATION was formed with capitalization totally inadequate for the business in which said corporation was engaged.

(f)  PLAINTIFF is informed and believes and thereon alleges that each ALTER EGO CORPORATION is insolvent.

(g)  By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the ALTER EGO CORPORATIONS would, under the circumstances, sanction a fraud and promote injustice in that PLAINTIFF would be unable to realize upon any judgment in its favor.

14.  PLAINTIFF is informed and believes and thereon alleges that, at all times relevant hereto, the individual Defendant PELEG and the ALTER EGO CORPORATIONS acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

## JURISDICTION AND VENUE

15.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000

and is between citizens of different States.

16. This Court has personal jurisdiction over DEFENDANTS, and venue in this Court is proper, because DEFENDANTS consented to jurisdiction and venue within Los Angeles County, California pursuant to Section 21(a) of the License and Development Agreement described below.

## GENERAL ALLEGATIONS

17. On or about September 22, 2017, Plaintiff EGGSLUT HOLDINGS and Defendant EGGSLUT NEW YORK entered into a License and Development Agreement wherein PLAINTIFF agreed to license certain intellectual property to Defendant EGGSLUT NEW YORK to open Eggslut Cafes throughout the city of New York (hereinafter "LICENSE AGREEMENT"). A true and correct of the LICENSE AGREEMENT is attached hereto as Exhibit 1 and incorporated by reference as though fully set forth herein.

18. PLAINTIFF operates a popular breakfast and sandwich eatery with locations throughout Los Angeles, Las Vegas, London, Kuwait City, and other international locations.

19. As a material inducement to PLAINTIFF to sign the LICENSE AGREEMENT, DEFENDANTS, either directly or through its agents, represented to PLAINTIFF that they had capital of at least two million dollars ($2,000,000) to open a minimum of eleven (11) Eggslut Cafes over a period of ten (10) years. PLAINTIFF is informed and believes, and alleges thereon, that this representation was untrue at the time that DEFENDANTS made the representation and that the representation was falsely made knowing and intending that PLAINTIFF would rely on this representation in its decision to sign the LICENSE AGREEMENT.

20. PLAINTIFF is informed and believes, and alleges thereon, that DEFENDANTS failed to adequately capitalize Defendant EGGSLUT NEW

YORK and Defendant GP EGG because they never had the means or intention to open any Eggslut Cafes in New York.  PLAINTIFF has repeatedly requested and demanded that DEFENDANTS provide proof of capitalization and/or accounting records for Defendant EGGSLUT NEW YORK and Defendant GP EGG, but DEFENDANTS have consistently and repeatedly ignored and denied PLAINTIFFS' requests.

21. PLAINTIFF is informed and believes, and alleges thereon, that Defendant PELEG formed Defendant GP EGG for the sole purpose of distancing and protecting himself from personal liability and not for any legitimate business purpose.  PLAINTIFF is informed and believes, and alleges thereon, that Defendant GP EGG never conducted any business since its formation, in addition to being undercapitalized or not capitalized at all.

22. Pursuant to Section 2 the LICENSE AGREEMENT, DEFENDANTS agreed to open at least one (1) Eggslut Café in the city of New York within one year of the effective date of the LICENSE AGREEMENT.  The effective date of the LICENSE AGREEMENT was September 22, 2017.  Despite urging and reminders from PLAINTIFF, DEFENDANTS failed to open any Eggslut Cafes on or before September 22, 2018.

23. As a result of DEFENDANTS' breach of the LICENSE AGREEMENT, PLAINTIFF has suffered significant damages by way of loss of license fees, loss of business profits, and loss of business opportunity costs in an amount no less ten million dollars ($10,000,000).

24. As of January 7, 2019, the LICENSE AGREEMENT between PLAINTIFF and DEFENDANTS was terminated.

///
///

## FIRST CAUSE OF ACTION

### For Breach of Contract

### (Against All DEFENDANTS)

25. PLAINTIFF realleges and incorporates by reference each paragraph above as though fully set forth herein.

26. On or about September 22, 2017, Plaintiff EGGSLUT HOLDINGS and Defendant EGGSLUT NEW YORK entered into a License and Development Agreement wherein PLAINTIFF agreed to license certain intellectual property to Defendant EGGSLUT NEW YORK to open Eggslut Cafes throughout the city of New York.

27. PLAINTIFF did all, or substantially all, of the significant things that the contract required it to do, and/or PLAINTIFF was excused from having to perform.

28. The conditions required by the contract for DEFENDANTS' performance had occurred; and/or certain conditions that did not occur or were waived or excused; and/or DEFENDANTS failed to do something that the contract required them to do; and/or DEFENDANTS did something that the contract prohibited them from doing.

29. PLAINTIFF was harmed in that it has suffered significant damages by way of loss of license fees, loss of business profits, and loss of business opportunity costs in an amount no less ten million dollars ($10,000,000).

30. DEFENDANTS' breach of contract was a substantial factor in causing PLAINTIFF's harm.

## SECOND CAUSE OF ACTION

### For Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All DEFENDANTS)

31. PLAINTIFF realleges and incorporates by reference each

paragraph above as though fully set forth herein.

32. On or about September 22, 2017, Plaintiff EGGSLUT HOLDINGS and Defendant EGGSLUT NEW YORK entered into a License and Development Agreement wherein PLAINTIFF agreed to license certain intellectual property to Defendant EGGSLUT NEW YORK to open Eggslut Cafes throughout the city of New York.

33. PLAINTIFF did all, or substantially all, of the significant things that the contract required it to do, and/or PLAINTIFF was excused from having to perform.

34. The conditions required by the contract for DEFENDANTS' performance had occurred; and/or certain conditions that did not occur or were waived or excused; and/or DEFENDANTS failed to do something that the contract required them to do; and/or DEFENDANTS did something that the contract prohibited them from doing.

35. DEFENDANTS unfairly interfered with PLAINTIFF's right to receive the benefits of the contract.

36. PLAINTIFF was harmed in that it has suffered significant damages by way of loss of license fees, loss of business profits, and loss of business opportunity costs in an amount no less ten million dollars ($10,000,000).

## THIRD CAUSE OF ACTION

### For Intentional Misrepresentation

### (Against All DEFENDANTS)

37. PLAINTIFF realleges and incorporates by reference each paragraph above as though fully set forth herein.

38. PLAINTIFF alleges that DEFENDANTS, both directly and through their agents, made false representations regarding their ability and intention to open and operate Eggslut Cafes that harmed PLAINTIFF.

39. DEFENDANTS represented to PLAINTIFF that various facts about themselves were true.

40. DEFENDANTS' representations were false.

41. DEFENDANTS knew that their representations were false when they made them, and/or that they made the representations recklessly and without regard for the truth.

42. DEFENDANTS intended that PLAINTIFF rely on their representations.

43. PLAINTIFF reasonably relied on DEFENDANTS' representations.

44. PLAINTIFF was harmed.

45. PLAINTIFF's reliance on DEFENDANTS' representations was a substantial factor in causing PLAINTIFF's harm.

## FOURTH CAUSE OF ACTION
### For Concealment
### (Against All DEFENDANTS)

46. PLAINTIFF realleges and incorporates by reference each paragraph above as though fully set forth herein.

47. PLAINTIFF alleges that she was harmed because DEFENDANTS concealed certain information about themselves.

48. PLAINTIFF and DEFENDANTS had a buyer-seller relationship wherein DEFENDANTS made certain representations and warranties about their ability and intention to open and operate Eggslut Cafes to PLAINTIFF before and after PLAINTIFF signed the LICENSE AGREEMENT.

49. DEFENDANTS intentionally failed to disclose certain facts to PLAINTIFF; and/or DEFENDANTS disclosed some facts to PLAINTIFF but intentionally failed to disclose other facts, making the disclosure

deceptive; and/or DEFENDANTS intentionally failed to disclose certain facts that were known only to them and that PLAINTIFF could not have discovered; and/or DEFENDANTS prevented PLAINTIFF from discovering certain facts.

50. PLAINTIFF did not know of the concealed facts.

51. DEFENDANTS intended to deceive PLAINTIFF by concealing the facts.

52. Had the omitted information been disclosed, PLAINTIFF reasonably would have behaved differently.

53. PLAINTIFF was harmed.

54. DEFENDANTS' concealment was a substantial factor in causing PLAINTIFF's harm.

## FIFTH CAUSE OF ACTION
### For Negligent Misrepresentation
### (Against All DEFENDANTS)

55. PLAINTIFF realleges and incorporates by reference each paragraph above as though fully set forth herein.

56. PLAINTIFF alleged that she was harmed because DEFENDANTS negligently misrepresented various facts about themselves.

57. DEFENDANTS represented to PLAINTIFF that various facts about themselves were true.

58. DEFENDANTS' representations were not true.

59. Although DEFENDANTS may have honestly believed that their representations were true, DEFENDANTS had no reasonable grounds for believing the representations were true when they made them.

60. DEFENDANTS intended that PLAINTIFF rely on their

-11-
**COMPLAINT**

representations.

61. PLAINTIFF reasonably relied on DEFENDANTS' representations.

62. PLAINTIFF was harmed.

63. PLAINTIFF's reliance on DEFENDANTS' representations was a substantial factor in causing PLAINTIFF's harm.

## SIXTH CAUSE OF ACTION

## For Trademark Infringement and Trademark Counterfeiting

## (Against All DEFENDANTS)

64. PLAINTIFF realleges and incorporates by reference each paragraph above as though fully set forth herein.

65. PLAINTIFF owns or is a licensee of the exclusive rights to the following trademarks ("EGGSLUT TRADEMARKS"):

| Trademark | Registration No. | Registration Date |
| --- | --- | --- |
| EGGSLUT | 5006706 | 7/26/2016 |
| EGGSLUT | 5006707 | 7/26/2016 |
| EGGSLUT | 5099381 | 12/13/2016 |

66. All of the trademark registrations are in full force and effect and are owned by PLAINTIFF. Many of the trademarks are incontestable pursuant to 15 U.S.C. § 1065.

67. The Eggslut name has been used in commerce since at least 2011 and is currently in use.

68. PLAINTIFF, or those under its authority, manufacture and distribute all of their advertising and products in conformity with the provisions of the United States trademark law.

69. Notwithstanding PLAINTIFF's well-known and prior common law and statutory rights in their respective trademarks, DEFENDANTS

have, with actual and constructive notice of PLAINTIFF's federal registration rights and long after PLAINTIFF established its rights, adopted and used the trademarks in commerce in the State of New York.

70. As of January 7, 2019, when the LICENSE AGREEMENT between PLAINTIFF and DEFENDANTS terminated, DEFENDANTS no longer had the right to use any of the EGGSLUT TRADEMARKS owned by PLAINTIFF. PLAINTIFF has made numerous demands for DEFENDANTS to stop using any of the EGGSLUT TRADEMARKS, but DEFENDANTS have continued to use the EGGSLUT TRADEMARKS in commerce, including, but not limited to, continuing to operate Defendant EGGSLUT NEW YORK LLC and prosecuting an unauthorized lawsuit in the Supreme Court of the State of New York using the EGGSLUT TRADEMARKS. PLAINTIFF is informed and believes, and alleges thereon, that DEFENDANTS have continued to use the EGGSLUT TRADEMARKS, name and goodwill to continue to network and negotiate leases and other deals, knowing that the Eggslut name is attractive to landlords. The Eggslut name attracts a trendy, "foodie" group, including international tourists, and brings in long lines at many existing locations. PLAINTIFF is considered what landlords would call an "anchor tenant," meaning that having Eggslut open a café in a location would help bring in customers for other tenants. Thus, PLAINTIFF is informed and believes, and alleges thereon, that DEFENDANTS are continuing to submit location requests using the EGGSLUT TRADEMARKS to popular and exclusive shopping centers.

71. DEFENDANTS have used the EGGSLUT TRADEMARKS without PLAINTIFF's authorization. DEFENDANTS' use of the EGGSLUT TRADEMARKS in commerce, in connection with the sale or offer to sell goods and services, has and will cause a likelihood of confusion,

deception, and mistake in that the buying public will believe that DEFENDANTS' acts are authorized, sponsored, approved, or associated with PLAINTIFF.

72. Said acts of infringement will cause irreparable injury to PLAINTIFF if DEFENDANTS are not restrained by the Court from further violation of PLAINTIFF'S rights as PLAINTIFF has no adequate remedy at law.

73. PLAINTIFF has suffered damages as a result of DEFENDANTS' acts.

74. DEFENDANTS' use in commerce of PLAINTIFF'S trademarks is an infringement of PLAINTIFF'S registered trademarks in violation of 15 U.S.C. § 1114(1).

75. DEFENDANTS willfully committed the acts alleged herein.

## SEVENTH CAUSE OF ACTION

### For Unfair Competition under the Lanham Act

### (Against All DEFENDANTS)

76. PLAINTIFF realleges and incorporates by reference each paragraph above as though fully set forth herein.

77. As a direct result of PLAINTIFF'S longstanding use, sales, advertising, and marketing, PLAINTIFF's EGGSLUT TRADEMARKS have acquired a secondary and distinctive meaning among the public who have come to identify PLAINTIFF's EGGSLUT TRADEMARKS with PLAINTIFF and its respective products.

78. DEFENDANTS' unauthorized and counterfeit use in commerce of PLAINTIFF's EGGSLUT TRADEMARKS exactly duplicates and appropriated PLAINTIFF's EGGSLUT TRADEMARKS and deludes and confuses the public into believing that PLAINTIFF approved, authorized, or sponsored DEFENDANTS' unauthorized and counterfeit

use in commerce.

79. DEFENDANTS, by misappropriating and using the likenesses of PLAINTIFF's EGGSLUT TRADEMARKS in connection with the sale or offer to sell goods and services, is misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their products and/or services. Defendants willfully caused such misrepresentation to the general public.

80. These acts constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

81. DEFENDANTS have obtained gains, profits, and advantages as a result of their unlawful acts.

82. PLAINTIFF has suffered monetary damages as a result of DEFENDANTS' acts.

## EIGHTH CAUSE OF ACTION

### For Declaratory Relief

### (Against All DEFENDANTS)

83. PLAINTIFF realleges and incorporates by reference each paragraph above as though fully set forth herein.

84. Defendant EGGSLUT NEW YORK LLC was only formed for the purpose of opening Eggslut cafes in the city of New York. Since the termination of the LICENSE AGREEMENT between PLAINTIFF and DEFENDANTS on January 7, 2019, Defendant EGGSLUT NEW YORK LLC no longer has any purpose for existing, as DEFENDANTS no longer has the right to open Eggslut cafes. PLAINTIFF has made numerous requests and calls for meetings to DEFENDANTS to dissolve Defendant EGGSLUT NEW YORK LLC, but DEFENDANTS have refused.

85. PLAINTIFF is informed and believes, and alleges thereon, that Defendant EGGSLUT NEW YORK LLC is not, nor has it ever been,

adequately capitalized.

86. PLAINTIFF is informed and believes, and alleges thereon, that Defendant EGGSLUT NEW YORK LLC is currently prosecuting an unauthorized lawsuit in the Supreme Court of the State of New York in violation of the Operating Agreement of Defendant EGGSLUT NEW YORK LLC.

87. Thus, PLAINTIFF prays for relief from the Court to declare Defendant EGGSLUT NEW YORK LLC judicially dissolved.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), PLAINTIFF hereby demands a trial by jury of all issues so triable.

## PRAYER

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as to all causes of action, as follows:

A. For general and compensatory damages according to proof at trial, but no less than ten million dollars ($10,000,000);

B. For all special damages, according to proof at trial;

C. For consequential damages according to proof at trial;

D. For exemplary and punitive damages in an amount to be determined by the Court;

E. For applicable statutory damages and penalties;

F. For reasonable attorneys' fees herein incurred by PLAINTIFF, pursuant to applicable law;

G. For an award of pre- and post-judgment interest at the rate allowed by the law;

H. For costs of suit herein incurred by PLAINTIFF;

I. For permanent injunctive relief restraining DEFENDANTS, their officers, agents, servants, employees, attorneys, and all those in

active concert or participation with them from:

 i. Further infringing PLAINTIFF's EGGSLUT TRADEMARKS by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products not authorized by PLAINTIFF including, but not limited to, apparel and related merchandise bearing any simulation, reproduction, counterfeit, or colorable imitation of any of PLAINTIFF's EGGSLUT TRADEMARKS;

 ii. Using any simulation, reproduction, counterfeit, or colorable imitation of any of PLAINTIFF's EGGSLUT TRADEMARKS and licensed trademarks in the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation, or distribution of unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to PLAINTIFF or to any goods sold, manufactured, sponsored, or approved by or connected with PLAINTIFF;

 iii. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act that can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by DEFENDANTS is in any manner associated or connected with PLAINTIFF, or are sold, manufactured, licensed, sponsored, approved, or authorized by PLAINTIFF;

 iv. Engaging in any other activity constituting unfair competition with any of PLAINTIFF, or constituting an

    infringement of any of PLAINTIFF's EGGSLUT TRADEMARKS or of PLAINTIFF's rights in, or to use or to exploit said trademarks, or constituting any dilution of any of PLAINTIFF'S names, reputations, or goodwill;

  v. Effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs i. through iv.;

  vi. Secreting, destroying, altering, or removing, any books or records that may contain any evidence of the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products that infringe any of PLAINTIFF's EGGSLUT TRADEMARKS; and

  vii. From aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon any of PLAINTIFF's EGGSLUT TRADEMARKS;

J. Directing that DEFENDANTS deliver for destruction all unauthorized products including apparel, labels, signs, prints, packages, dyes, wrappers, receptacles, and advertisements in their possession or under their control bearing any of PLAINTIFF's EGGSLUT TRADEMARKS or any simulation, reproduction, counterfeit, or colorable imitation thereof, and all plates, molds, heat transfers, screens, matrices, and other means of making the same;

K. Directing that DEFENDANTS report to this Court within thirty (30) days after a Permanent Injunction is entered to show its compliance with paragraphs I and J above;

L. Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that PLAINTIFF authorized or are related in any way to any products manufactured, sold, or otherwise circulated or promoted by DEFENDANTS;

M. Awarding to PLAINTIFF from DEFENDANTS, as a result of DEFENDANTS' unauthorized and counterfeit use of PLAINTIFF's EGGSLUT TRADEMARKS, three times PLAINTIFF's damages and three times DEFENDANTS' profits, after an accounting, or statutory damages, should PLAINTIFF opt for such relief, consisting of $200,000.00 for each of PLAINTIFF's EGGSLUT TRADEMARKS infringed upon by DEFENDANTS, and to the extent this Court concludes such infringement was willful, $2,000,000.00 for PLAINTIFF's EGGSLUT TRADEMARKS infringed upon by DEFENDANTS pursuant to 15 U.S.C. § 1114 and § 1117;

N. Awarding to PLAINTIFF from Defendants selling unauthorized products three times its damages there from and three times Defendants' profits there from, after an accounting, pursuant to 15 U.S.C. § 1125(a) and § 1117;

O. Awarding to Plaintiffs their reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. § 1117;

P. Declaring that Defendant EGGSLUT NEW YORK LLC has been judicially dissolved; and

Q. For such other and further relief as the Court may deem proper.

| | | |
|---|---|---|
| 1 | Dated:  August 28th, 2019 | Respectfully Submitted, |
| 2 | | **WEST THEMIS LAW, PC** |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | By:_____<br>Sally S. Chan, Esq. |
| 7 | | Karen K. Tso, Esq.<br>Attorneys for Plaintiff |
| 8 | | EGGSLUT HOLDINGS LLC |